UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CYNTHIA DENISE THURMAN,

    Plaintiff,

v.                                      Case No:   2:18-cv-16-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## OPINION AND ORDER

Before the Court is Plaintiff Cynthia Thurman's Complaint, filed on January 9, 2018. (Doc. 1). Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint legal memorandum detailing their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.    Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

    **A.    Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work or any

other substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

### B. Procedural History

On July 28, 2011, Plaintiff filed an application for disability insurance benefits. (Tr. at 155, 291-99). Plaintiff asserted an onset date of August 1, 2007. (*Id.* at 293). Plaintiff's application was denied initially on September 28, 2011 and on reconsideration on December 16, 2011. (*Id.* at 155, 173).[1] A hearing was held before Administrative Law Judge ("ALJ") Duane D. Young on January 26, 2017. (*Id.* at 97-142). The ALJ issued an unfavorable decision on May 24, 2017. (*Id.* at 15-28). The ALJ found Plaintiff not to be under a disability from August 1, 2007, the alleged onset date, through December 31, 2012, the date last insured. (*Id.* at 28).

On November 22, 2017, the Appeals Council denied Plaintiff's request for review. (*Id.* at 1-5). Plaintiff filed a Complaint (Doc. 1) in the United States District Court on January 9, 2018. This case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 18).

### C. Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that he is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir.

---

[1] Previous to the instant case, ALJ M. Dwight Evans issued an unfavorable decision on November 17, 2014. (Tr. at 178-88). The Appeals Council remanded the case back to an Administrative Law Judge for further proceedings. (*Id.* at 196-97). The remaining procedural history relates to the instant action and is set forth above.

2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[2] An ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through December 31, 2012. (Tr. at 18). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of August 1, 2007, through her date last insured of December 31, 2012. (*Id.*). At step two, through the date last insured, the ALJ determined that Plaintiff suffered from the following severe impairments: "mild lumbar spine degenerative changes, cervical spine degenerative changes, obesity, and major depressive disorder (20 [C.F.R. §] 404.1520(c))." (*Id.*). At step three, the ALJ determined that through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (*Id.*).

At step four, the ALJ found:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 404.1567(b) except no more than occasional

---

[2] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

exposure to vibration and workplace hazards; no more than occasional stooping; precluded from performing complex tasks, but remains capable of performing unskilled labor; no more than occasional interaction with supervisors, coworkers, and the public; and no more than occasional changes in a workplace setting.

(*Id.* at 20).

The ALJ determined that Plaintiff was unable to perform any past relevant work as a group worker or teacher, learning disabled. (*Id.* at 27). The ALJ considered Plaintiff's age, education, work experience, and residual functional capacity ("RFC"), and found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (*Id.*). The ALJ noted that the vocational expert identified the following representational occupations that an individual with Plaintiff's age, education, work experience, and RFC would be able to perform: (1) cleaner, DOT # 323.687-014, light, unskilled work, SVP 2; (2) router, DOT # 222.587-038, light unskilled work, SVP 2; and (3) label coder, DOT # 920.58-014, light, unskilled work, SVP 2. (*Id.* at 28).[3] The ALJ concluded that Plaintiff was not under a disability at any time from August 1, 2007, the alleged onset date, through December 31, 2012, the date last insured. (*Id.*).

### D. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—*i.e.*, the evidence

---

[3] "DOT" refers to the *Dictionary of Occupational Titles*.

must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II.     Analysis

On appeal, Plaintiff raises the following issue: whether the ALJ evaluated the medical opinion evidence consistent with the regulations and the Eleventh Circuit precedent. (Doc. 21 at 13).[4]

---

[4] Within the above issue, Plaintiff briefly raises an argument that the ALJ's RFC does not contain all of Plaintiff's limitations and, thus, the RFC is contrary to law. (Doc. 21 at 15). Plaintiff also briefly argues that the hypothetical to the vocational expert does not contain all of Plaintiff's limitations. (*Id.*). As set forth herein, the Court finds that the ALJ considered Dr. Young's opinion and properly afforded it little weight. Thus, the Court finds that the ALJ was not required to include Dr. Young's limitations in the RFC nor in the hypothetical to the vocational expert. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (finding that the RFC is "based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments."); *Lee v. Comm'r of Soc. Sec.*, 448 F. App'x 952, 953 (11th Cir. 2011) (finding that an ALJ is not required to include findings in the hypothetical that the ALJ found to be unsupported by the record).

Plaintiff asserts that she met her burden of establishing evidence that she was disabled by producing Dr. Young's medical records and opinion. (Doc. 21 at 14). Plaintiff also argues that the ALJ did not provide sufficient reasons to discount Dr. Young's opinion. (*Id.* at 16-17).

The Commissioner argues that the ALJ provided good reasons supported by substantial evidence to give little weight to Dr. Young's opinion. (*Id.* at 23).

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the ALJ's RFC determination at step four. *See Rosario v. Comm'r of Soc. Sec.*, 877 F. Supp. 2d 1254, 1265 (M.D. Fla. 2012). The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011). Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).

The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004). The Eleventh Circuit has concluded that good cause exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.*

In this case, the ALJ thoroughly summarized Gregory G. Young, M.D.'s treatment notes as follows:

> A review of the claimant's medical records reveals a history of mental health treatment for major depressive disorder at the Lee Mental Health Center since December 2009. She underwent medication management with psychiatrist, Dr. Gregory Young. At her initial psychiatric evaluation, she denied having auditory or visual hallucinations (Ex. 4F/17). On mental status examination in January 2010, she was guarded but cooperative. Her mood was depressed and angry. Affect was flat. Thought processes were not disorganized. There was no suicidal ideation. She described auditory hallucinations of bells ringing and noise. Insight was poor and judgment was poor. She reported that her pain aggravated her depression and that she feels anxious at times. She is easily aggravated. Subsequent treating notes indicate she had some benefit from her medication regimen. However, she continued to complain[] of auditory hallucinations and having trouble sleeping. In September 2010, she reported having auditory hallucinations of her mom saying degrading things. GAF was 45. In July 2011, GAF was 55. (Ex. 4F/9, 13, 14)[.]
>
> Subsequent mental health treating records from October 2011 indicate that she reported becoming aggravated easily. She reported ongoing auditory hallucinations. She was sleeping better with Trazadone. Listening to church music helps her handle the auditory hallucinations. In June 2012, the claimant reported that litigation was settled and she was no longer in pain management. She was still reporting hallucinations. The voices call her name and tell her to do bad things such as cutting her boyfriend's tires, which she did. In September 2012, the claimant reported persisting auditory hallucinations. She also reported having seven alternate personalities. One is her favorite. She was now attending pain management. Despite these reports, her diagnosis did not change and her medication regimen of Zoloft, Haldol, Trazadone, and Depakote were continued and not altered. (Ex. 6F, 17F/11, 15)[.]

(Tr. at 21-22). Plaintiff does not raise any issues as to the thoroughness or the accuracy of the ALJ's summary of Dr. Young's treatment notes.

Instead, Plaintiff argues that the ALJ "gave no obvious consideration to the regulation that provides the opinions of treating sources are generally entitled to more weight." (Doc. 21 at 16). Further, Plaintiff argues that the ALJ did not include a discussion regarding Dr. Young being a psychiatrist and, thus, a specialist in his field. (*Id.*). Here, the ALJ noted that Plaintiff had a history of mental health treatment and that she underwent medication management "with

7

psychiatrist, Dr. Gregory Young." (Tr. at 21). Further, the ALJ summarized Dr. Young's treatment notes. (*Id.* at 21-22). From this summary, the ALJ clearly noted that Dr. Young treated Plaintiff for her mental impairments and, further, the ALJ recognized that Dr. Young is a psychiatrist and, thus, a specialist. (*Id.*). The Court finds Plaintiff's arguments unpersuasive.

The ALJ also considered Dr. Young's December 3, 2013 mental residual functional capacity questionnaire. (*Id.* at 26). The ALJ noted that Dr. Young found Plaintiff had marked limitations in social functioning, concentration, persistence, and pace as well as adaption. (*Id.*). The ALJ afforded Dr. Young's opinion little weight. The ALJ specifically found:

> This opinion is given little weight, as there is no indicate that the limitations extend back prior to the date of the opinion. In addition, Dr. Young's opinion stands by itself in the record as indicating the claimant has such debilitating mental limitations. All other sources expressing an opinion on limitation, both before and after date last insured expiration, indicate she has fewer limitations than found by Dr. Young and that she has limitations more consistent with those found in the residual functional capacity as set forth above. Furthermore, the opinion is not supported by the objective clinical signs and findings recorded by Dr. Young in his own treatment notes. The objective findings in the treating notes are much milder than the subjective statements of the claimant. It seems more likely than not that Dr. Young gave great weight to the claimant's subjective statements in assessing the limitations in the questionnaire. For these reasons, Dr. Young's opinion is given significantly less evidentiary weight. (Ex. 26F)[.]

(*Id.* at 26).

The ALJ essentially afforded little weight to Dr. Young's opinion for the following four (4) reasons: (1) there is no indication Plaintiff's limitations extend back to a date prior to the date of Dr. Young's opinion; (2) Dr. Young's opinion as to Plaintiff's debilitating mental limitations stands by itself and all other sources' opinions on Plaintiff's limitations indicate that Plaintiff has fewer limitations; (3) Dr. Young's opinion is not supported by his treatment notes; and (4) Dr. Young gave great weight to Plaintiff's subjective symptoms in assessing the

8

limitations in the questionnaire and the objective findings are much milder than Plaintiff's subjective statements. (*Id.*). The Court addresses each of these reasons in turn.

*Whether Dr. Young's Opinion Extended to a Time Period Prior to the Date of His Opinion*

Plaintiff argues that Dr. Young began treating Plaintiff in January 2010 and "there is no reason to believe that his opinion does not relate to the *entire course of his treatment relationship.*" (Doc. 21 at 21 (original emphasis)). The Commissioner asserts that Dr. Young's opinion was issued "over a year after the relevant time period in this case." (*Id.* at 27).

In the decision, the ALJ found that Dr. Young's opinion did not indicate that the limitations he found extended back to a time prior to the date of the opinion. (*Id.*). In this case, Plaintiff's date last insured was December 31, 2012. (*Id.* at 18).

A claimant seeking disability benefits must prove that she is disabled. *Stone v. Comm'r of Soc. Sec. Admin.*, 596 F. App'x 878, 879 (11th Cir. 2015) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).

> For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file. 20 C.F.R. § 416.202-03. Unlike SSI, which has no insured-status requirement, a claimant seeking DIB must demonstrate disability on or before the last date on which she was insured, to be eligible for benefits. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

*Id.* Here, Plaintiff seeks disability insurance benefits and, thus, she must prove that she was disabled on or before December 31, 2012, her date last insured.

Dr. Young completed the Mental Residual Functional Capacity Questionnaire on December 3, 2013, nearly a year after Plaintiff's date last insured. (Tr. at 936-40). The only indication in Dr. Young's December 3, 2013 opinion of a temporal time frame is the question of whether "the impairment lasted or is to be expected to last 12 months or more?" (Tr. at 940). Dr. Young checked the form, indicating yes. (*Id.*). From this statement alone, the Court cannot

determine if Dr. Young found the severe limitations in the questionnaire present on or before the date last insured of December 31, 2012. Even though Plaintiff treated with Dr. Young during the relevant time period prior to the date last insured, Dr. Young did not indicate in this form that his opinion relates to the relevant time period. (*Id.*). Thus, the Court finds that the ALJ did not err in determining that Dr. Young's opinion did not extend back to the relevant time period.

Plaintiff also argues that the ALJ was obligated to recontact Dr. Young for clarification. (Doc. 21 at 21). A hearing before an ALJ is not an adversarial proceeding and the ALJ has a basic duty to develop a full and fair record. *Robinson v. Astru*e, 365 F. App'x 993, 998 (11th Cir. 2010) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)). "According to Social Security regulations, an ALJ should recontact a claimant's treating physician if the evidence in the record is otherwise inadequate to determine whether the claimant is disabled. 20 C.F.R. §§ 404.1512(e), 416.912(e)." *Id.* at 999. To determine if remand is necessary, a court must determine whether the record reveals evidentiary gaps that would result in unfairness or clear prejudice. *Id.* (citing *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995)). Here, Plaintiff failed to show an evidentiary gap that would result in unfairness or clear prejudice. Further, the ALJ considered whether Dr. Young's opinion related to the relevant time period as only one reason to discount his opinion. The ALJ also supplied many other reasons not related to whether Dr. Young's opinion applied to the relevant time period. Thus, the Court finds that the ALJ did not err by failing to recontact Dr. Young.

*Whether Dr. Young's Opinion Is Supported by Other Sources*

The ALJ found that Dr. Young's opinion as to Plaintiff's debilitating mental limitations stands by itself and, further, all other sources' opinions on Plaintiff's limitations indicate that Plaintiff has fewer limitations than found by Dr. Young. (*Id.* at 26). Plaintiff argues that this

statement is not true. (Doc. 21 at 20). Plaintiff argues that Dr. Kasprzak found Plaintiff to have moderate to marked limitations in responding appropriately in work situations and to changes in routine work settings. (*Id.* at 20-21). Plaintiff claims that Dr. Young's opinion agrees with Dr. Kasprzak's findings as to these limitations. (*Id.*). Plaintiff also claims that the ALJ discussed Dr. Kasprzak's opinion and Dr. Young's opinion in isolation. (*Id.* at 21).

The ALJ considered Cheryl Kasprzak, Psy.D's August 22, 2016 Medical Source Statement and afforded it partial weight. (Tr. at 26). The ALJ found that Dr. Kasprzak "could not assess limitations regarding understanding, remembering, or carrying out complex instructions or on the ability to make judgments on complex work-related decisions because the claimant did not put forth good effort and was not engaged during testing." (*Id.*). The ALJ also gave less weight to Dr. Kasprzak's finding of marked limitations in social functioning, "as this is not well supported by the medical evidence as a whole. Furthermore, there is no indication that these findings go back to the relevant period from the alleged onset date through the date last insured." (*Id.*).

In Dr. Kasprzak's evaluation, she noted that the results of the test for memory malingering were not "valid, reliable and are an underrepresentation of [Plaintiff's] functioning." (Tr. at 1357). Dr. Kasprzak found that Plaintiff was not engaged in this testing. (*Id.*). In addition, Dr. Kasprzak did not fully complete her Medical Source Statement form, noting that some of the "domains cannot be assessed at this time as [Plaintiff] did not appear engaged in the WMS-IV." (*Id.* at 1361). Dr. Kasprzak also checked the boxes that Plaintiff has moderate to marked limitations in responding appropriately to usual work situations and to changes in a routine work setting. (*Id.* at 1362). Dr. Kasprzak commented that "[t]he last domain is based on her lack of work the past 9 years." (*Id.*).

11

Plaintiff argues that Dr. Kasprzak's last finding of a moderate to marked limitation support Dr. Young's marked limitations findings. (Doc. 21 at 21). The Court does not find this argument persuasive. The ALJ thoroughly considered both Dr. Young's and Dr. Kasprzak's opinions and afforded them little or partial weight. (*Id.* at 21, 26). Dr. Kasprzak commented that Plaintiff did not appear engaged in some of the testing. (*Id.* at 1361). Further, Dr. Kasprzak only checked moderate to marked and not marked alone. (*Id.* at 1362). Dr. Kasprzak also commented that she made this decision because Plaintiff had not worked in the past nine (9) years. (*Id.*). The Court finds that Dr. Kasprzak's findings do not fully support Dr. Young's marked limitations in most of the mental functioning areas. Thus, the Court finds that substantial evidence supports the ALJ's finding that Dr. Young's opinion stands alone and is not supported by other sources.

*Whether Dr. Young's Opinion Is Supported by His Treatment Notes*

Plaintiff argues that the ALJ's "rejection of Dr. Young's opinion as inconsistent with his *own progress notes* is simply an impermissible substitution of the ALJ's lay opinion for that of an expert." (Doc. 21 at 18 (emphasis original)). The Court finds this argument unpersuasive, especially in light of the legal authority stating that one method of establishing good cause to discount a treating physician's opinion is finding that the opinion is inconsistent with the physician's own medical records. *See Phillips*, 357 F.3d at 1240.

Plaintiff argues that Dr. Young's treatment notes show that Plaintiff reported auditory hallucinations during every office visit, appeared significantly irritable, repeatedly presented with an angry mood, presented with a depressed mood on multiple occasions, and continued on medications. (Doc. 21 at 20). In this case, the ALJ afforded great weight to Olin Hamrick, Ph.D.'s response to medical interrogatories dated November 18, 2016. (Tr. at 26). Dr. Hamrick

reviewed Dr. Young's treatment notes and his opinion and found that Dr. Young's opinion as to Plaintiff's limitations "is not supported by [] his own contemporaneous session notes which indicate benign objective Mental Status observations." (*Id.* at 1553). The ALJ discussed Dr. Hamrick's opinion and gave it great weight because it was rendered by a specialist and was well-supported by the medical evidence of record. (*Id.* at 26). Thus, the ALJ did not solely rely on his own review of the Dr. Young's treatment notes and opinion, but also relied on Dr. Hamrick's opinion in finding that Dr. Young's treatment notes do not support Dr. Young's opinion as to Plaintiff's limitations.

Accordingly, the Court finds that substantial evidence supports the ALJ's decision to discount Dr. Young's opinion because his treatment notes do not support his findings as to Plaintiff's mental limitations.

*Whether Dr. Young Relied on Plaintiff's Subjective Statements over the Objective Findings*

Plaintiff argues that the ALJ's assertion that Dr. Young based his opinion regarding functional limitations on Plaintiff's subjective complaints is "pure speculation" because Dr. Young did not so state and the ALJ did not point to any evidence that supports this statement. (Doc. 21 at 17). Plaintiff also argues that of course Dr. Young relied on Plaintiff's subjective statements because subjective statements are "*always*" a part of a medical examination. (*Id.* at 18 (emphasis original)).

Here, the ALJ again relies on Dr. Hamrick's opinion in finding that Dr. Young's objective findings in his treatment notes are much milder than Plaintiff's subjective statements. (Tr. at 26). Specifically, the ALJ notes that "Dr. Hamrick pointed out the difference between the subjective symptoms reported by the claimant that Dr. Young records (auditory hallucinations of noise, bells, voices, whispering, etc.) and the objective clinical signs and findings recorded by

13

Dr. Young in his own treatment notes. The objective findings in the notes are much milder than the subjective statements of the claimant." (*Id.* at 26). In Dr. Hamrick's Medical Source Statement, he finds that "the level of severity of functional limitations opined by Dr. Young as 26F is not supported by [] his own contemporaneous session notes which indicate benign objective Mental Status observations." (*Id.* at 1553).

Further, Markby Ronald, M.D. saw Plaintiff on February 24, 2014, when Dr. Young was unavailable. (Tr at 1063). Dr. Ronald stated that Plaintiff claimed she heard voices, but she was "not very believable." (*Id.* at 1064). Further, Dr. Markby found that Plaintiff was "clearly" exaggerating as to her depression, exaggerating her symptoms to gain attention, and being manipulative. (*Id.* at 1063-65). Dr. Hamrick noted these findings and also noted that Dr. Kasprzak found Plaintiff was not engaged in the testing process, which did not produce valid results. (*Id.* at 1553). Finally, Dr. Hamrick also noted that a psychiatrist, Dr. Schaerf, reported that Plaintiff was malingering. (*Id.*).

The Court finds that substantial evidence supports the ALJ's decision to afford Dr. Young's opinion little weight based in part on Dr. Young relying on Plaintiff's subjective statements in assessing her limitations rather than on the objective findings in the treatment notes. Here, the ALJ relied not only on his own review of the medical records but also on Dr. Hamrick's assessment of Dr. Young's treatment notes, objective findings, and ultimate conclusion as to Plaintiff's functional limitations.

## III. Conclusion

For the foregoing reasons, the Court finds that the ALJ did not err in affording little weight to Dr. Young's opinion. Upon consideration of the submissions of the parties and the

administrative record, the Court finds that substantial evidence supports the ALJ's decision and the decision was decided upon proper legal standards.

It is hereby **ORDERED** that:

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on February 19, 2019.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties